### S. S. FLOYD v. J. P. PATTERSON.

#### No. 2592.

1. **Contract—Future Delivery.**—A contract for the future delivery of stocks, produce, or other merchandise, in which an actual delivery is not contemplated but only a payment of the difference between the contract price and the value of the article at the time agreed on, will not support an action. If, however, the contract has been completed, another contract collateral thereto and supported by a new consideration may be enforced.

2. **Same.**—When an agent has received money growing out of an illegal contract he may be compelled to pay it over in a suit by his principal.

3. **Cases Approved.**—Gilliam v. Brown, 47 Miss., 641; and Owen v. Davis, 1 Bailey, 315, approved.

4. **Principal and Agent—Contract.**—The law implies a promise on the part of the agent to pay over to his principal money received for him as sub-agent, and the illegality of the contract by virtue of which the money was collected affords no defense.

5. **Pleading.**—When the suit is against a firm and an individual whose relation to the firm either as agent or partner is unknown except to himself and the firm, the plaintiff may allege that the individual was either a partner or a member of the firm when in either event the liability would be the same. One who contracts with a broker for the future delivery of stocks or produce when no actual delivery is contemplated but only the payment of the difference between the contract price and the value of the article at some future period, can only recover by showing that the money claimed under the contract was paid to the broker for his use. If the money was paid under the contract to the broker not as an intermediary or agent for the plaintiff but in his own right, no recovery can be had.

APPEAL from Smith. Tried below before Hon. Felix J. McCord. The opinion states the case.

*Clark, Dyer & Bolinger*, for appellants. — The pleading on the part of the plaintiff alleging J. Leopold was an agent of S. S. Floyd & Co. and also their partner is multifarious and contradictory, and a special demurrer interposed on such ground was well taken and should have been sustained, and it was error in the court below to overrule same. Mayton v. T. & P. R. R. Co., 63 Texas, 77; Sayles's Texas Pleadings, secs. 22 and 23 and authorities cited.

There was no evidence introduced showing that the defendants S. S. Floyd & Co. were brokers for any person or that they sold out any wheat contract of plaintiff "as brokers," but the evidence on the contrary, it is submitted, showed they were principals in the particular transaction

involved in this case, and it was not shown they acted as brokers for any named person to said transaction, and the charge was without evidence for its support and was erroneous. Blanton v. Mayes, 58 Texas, 422; Austin v. Talk, 20 Texas, 164.

The verdict of the jury is contrary to the evidence and not supported thereby and herein in the following respect:

For the reason the evidence without contradiction or conflict shows that the contract the plaintiff is seeking to enforce in this action was a wager or gambling contract and was for the purchase of 100,000 bushels of wheat, which wheat was not to be delivered and not contemplated to be delivered by either plaintiff or defendants when the contract was made, but only the differences in fluctuations of the price was to be settled, and such being the basis of plaintiff's claim he was not entitled to a recovery. Seeligson v. Lewis & Williams, 65 Texas, 215.

This action being against parties claimed to be primarily liable and same being predicated on an illegal contract can not be enforced by the courts. Davis v. Sittig, 65 Texas, 497; Seeligson v. Lewis & Williams, 65 Texas, 215.

The defendant J. Leopold having been averred by plaintiff in his pleadings to be the agent of plaintiff and also of S. S. Floyd & Co., and the plaintiff, as shown by the evidence, having contracted with him as a broker and agent, and he, Leopold, thus being the agent of both the plaintiff and S. S. Floyd & Co., and the latter having paid over to this common agent the differences on the 100,000 bushels of wheat sued for, to-wit, the amount claimed by plaintiff, such payment by said Floyd & Co. to such common agent absolves them from all further liability. Traub v. Meliken, 67 Me., 63 (2 Am. Dec., 14); Huntington v. Knox, 61 Mass. (7 Cush.), 373; Wait's Actions and Defenses, vol. 1, p. 284.

*Whitaker & Bonner,* for appellee.—When an agent receives money from his principal to pay a third person, which appropriation he assents to, he is liable in an action to such third person. This does not affect the principal's liability, and the fact that the principal may also be held liable does not affect the liability of the agent. There is a double obligation, though there can be but one satisfaction. Ewell's Evans on Agency, 428, 435, 436, note; 8 Wait's Actions and Defenses, 55 and 60.

The two counts in plaintiff's pleading, alleging in one J. Leopold's agency and in the other his partnership in the firm of S. S. Floyd & Co., is not multifarious and contradictory, and the court below correctly overruled the defendant's special exception.

Agency and partnership are too intimately connected to be inconsistent or contradictory. The fact of agency is one of the strongest tests of partnership. Rule 4 (Dist. Ct.), 47 Texas, 616; R. R. Co. v. Graves, 50 Texas, 202; 5 Wait's Actions and Defenses, 112, and cases cited.

The relation between Patterson and Floyd & Co., brokers, was that of principal and agent. Irvin v. Williar, 110 U. S., 513.

While the law will not enforce an illegal contract, yet if a servant or agent of another has, in the prosecution of an illegal enterprise for his principal received money or other property belonging to the principal, he is bound to turn it over to him, and can not shield himself from liability therefor upon the ground of the illegality of the original transaction. De Leon v. Trevino, 49 Texas, 88; Pfeuffer v. Maltby, 54 Texas, 460; Read v. Smith, 60 Texas, 379; Owen v. Davis, 1 Bailey (S. C.), 316; Brooks v. Martin, 2 Wall., 79; Gilliam v. Brown, 43 Miss., 661 (reviews the question thoroughly); Ewell's Evans on Agency, 50 (notes 1 and 4), 36 (note 1 and cases cited); Kieweit v. Rendskoff, 46 Wis., 481.

GAINES, ASSOCIATE JUSTICE. —Appellant Leopold was engaged in business in the city of Tyler as a broker in grain and other produce, or as the agent or partner of his coappellants, who had their principal place of business in Houston, and were either brokers or dealers in such commodities. The principal business was in contracts for the delivery of produce at a future time, in which it was contemplated that the commodities should not be delivered but only that the profit or loss on the transactions should be paid.

On January 28, 1887, appellee placed an order or made a contract with Leopold, who was purporting to act for Floyd & Co., for the delivery in May of 100,000 bushels of wheat. Leopold gave him a slip which read as follows: "Confirmed orders. Tyler, Texas, January 28, 1887. J. Leopold, agent for S. S. Floyd & Co., future brokers in grain, provisions, cotton, and stocks. Bought acc't J. P. Patterson: 100,000 May wheat." (Signed) "J. Leopold."

One thousand dollars was paid at the time as a margin, which was increased by additional demands to $7000, when the trade was "closed out." There was a net profit to appellee in the transaction of $625. Floyd & Co. transmitted the sum of $7625 to Leopold to be paid in settlement of the transaction. He paid appellee a small part of the sum due him, leaving a balance still due of $6762.

Appellee brought this suit against appellants jointly to recover this sum, alleging that Leopold was the agent and also the partner of Floyd & Co. in the transaction, and that in the deal Floyd & Co. acted as brokers, and as such had received of their principals the sum sued for in satisfaction of plaintiff's demand. The defendants denied the agency and also the partnership, and also that Floyd & Co. acted for any third party in the transaction or received any money from any third party on plaintiff's account. The plaintiff obtained a verdict and judgment for the full amount of his demand against all the defendants.

We will proceed to the consideration of the main question in the case.

This is presented by appellant's assignment of error that the verdict of the jury is contrary to the evidence "for the reason that the evidence without contradiction or conflict shows that the contract which the plaintiff is seeking to enforce in this action was a wager or gambling contract," etc. According to the testimony the original transaction is clearly such as has been denounced by this court as being contrary to public policy, and therefore such as can not be enforced. Seeligson v. Lewis & Williams, 65 Texas, 215. Counsel for appellee concede the proposition that the original contract will not support an action, but maintain that Floyd & Co. were merely acting as brokers in the transaction.

It is well settled that a contract for the future delivery of stocks, produce, or other mercandise in which an actual delivery is not contemplated but only a payment of the difference between the contract price and the value of the article at the time agreed upon as the date of delivery, is a mere wagering contract, which will not support an action. But if the transaction has been completed and another grows out of it collateral to it, dependent upon a new consideration, the new contract is not vitiated by the the taint of the old one, and will be enforced. "It has been observed that the test whether a demand connected with an illegal act can be enforced is whether the plaintiff requires any aid from the illegal transaction to establish his case." Gilliam, Exr., v. Brown, 43 Miss., 641, citing Simpson v. Blass, 2 Taunt., 246; Roby v. West, 4 N. H., 290. It is accordingly held that when one as agent of another has received money growing out of an illegal contract he can be made to pay it over at the suit of his principal. In the case above cited (Gilliam, Exr., v. Brown) the testator of the defendant, as the agent of the plaintiff, took the latter's cotton to Memphis during the war and sold it there, as was conceded, in violation of law, and received the proceeds. The plaintiff was held entitled to recover. In Beetson v. Beetson, Law Rep., 1 Ex. Dep., 13, "the court held that the plaintiff could recover on a check given by the defendant to plaintiff for moneys received by defendant for winnings on bets made by defendant with third persons as agent of plaintiff."

In Owen v. Davis, 1 Bailey, 315, the defendant received a note in settlement of the joint winnings of plaintiff and himself at cards. He transferred the note in payment of a gambling debt of his own to a third party who received payment of the maker at a discount. The plaintiff was held entitled to recover one-half of the amount which was actually paid by the maker of the note. In these cases, and in many similar ones which need not be cited, it is held that the cause of action is not dependent upon the illegal transaction. When the plaintiff shows that the defendant has received of a third party money for his use, the law from the naked fact implying a promise, the case is made out without going into the illegal transaction, and the defendant will not be permitted to set up

the illegality of the original contract in order to defeat a recovery. So far the rule seems to be generally concurred in and the principle of the rule is intelligible. There are authorities, even some in our own State, which go further, but we need not discuss them. Counsel for appellee seek to bring this case under the rule of decision laid down in the cases last cited, and the question presents itself whether there is sufficient evidence in the record before us to warrant the jury in finding that a case existed in which Floyd & Co. upon the close of the transaction received any money for the use and benefit of appellee. Harris, who was a member of the firm of Floyd & Co., testified that as to the dealings in futures that firm were not brokers but were dealing on their own account. In other words, his testimony was positively and distinctly to the effect that when Floyd & Co. accepted an order or contract for future delivery they accepted it for themselves as principals and not as agents of another. He also testified that in the particular transaction in question in this suit Floyd & Co. dealt upon their own account. The testimony of Leopold is substantially to the same effect.

We have failed to find anything in the record which is in conflict with this evidence. The testimony of appellee does not show that he knew any one in the transaction except Leopold and Floyd & Co. Neither does that of his silent partner in the contract. There is strong evidence tending to show that Floyd & Co. were held out as brokers. Perhaps the verdict should be held conclusive upon that question for the reason that, as we think, there was sufficient evidence to warrant the jury in finding that Floyd & Co. are estopped to deny the agency of Leopold, and in the contract signed by him they are named as brokers.

But appellee's case does not rest upon the fact that Floyd & Co. permitted themselves to be held out as brokers, or were in fact such. His case is not maintainable against Floyd & Co. by proof that they were acting for third parties, or that they are estopped to deny that fact, but he must show that as a matter of fact in a settlement of his contract Floyd & Co. received of some third party for his use the sum of money which he seeks to recover. There is no proof whatever of the intervention of any third party in this transaction, or that any money was ever paid to Floyd & Co. for plaintiff on its account. The payment of money to them for his use is the gist of the only action he can maintain against Floyd & Co. growing out of the contract disclosed by the evidence. The evidence shows that the money which was coming to plaintiff under the contract was sent by Floyd & Co. to Leopold, but there is no testimony showing that the money was paid to Floyd & Co. for plaintiff by any one. This latter was an affirmative fact which it was incumbent upon plaintiff to prove in order to maintain his suit against that firm. The mere fact that they may have been held out as brokers and may ostensibly have contracted as brokers does not prove that in this particular

transaction they had a principal and that such principal paid them the money for plaintiff. We conclude that the verdict of the jury as to Floyd & Co. is not supported by the evidence, and that therefore the judgment must be reversed.

What we have said as to the verdict against Floyd & Co. does not apply to that against Leopold. It is shown that Floyd & Co. placed the money in his hands, if not for the benefit of plaintiff by name, at least in settlement of his contract. The principles we have already announced we think sufficient to show that the illegality of the transaction does not stand in the way of plaintiff recovering a judgment against him. But the reversal of the judgment as to Floyd & Co. reverses it as to him.

We are of the opinion that the exceptions to the petition on the ground of the misjoinder of parties and of multifariousness were not well taken. If the plaintiff had shown as he alleged that Floyd & Co. had received the sum of money sued for from some third party on account of plaintiff and that they had remitted it to Leopold and that he had failed to pay it over, he would have shown a cause of action both against Leopold and the company, and since both causes of action grew out of the same transaction they could be joined in the same suit. We also think that our system of pleading permits a plaintiff who is doubtful about the particular facts which he can establish to plead in the alternative without rendering his pleading demurrable for inconsistency or multifariousness. The testimony in this case shows that the exact relations between the defendants existing at the time the cause of action arose were not definitely known to any one but themselves, and serves to illustrate the necessity which frequently exists of permitting alternative allegations. Whether under a given state of facts one is to be considered as the agent or partner of another is often difficult to determine, and in such a case it is peculiarly proper to permit a party to allege that he is either the one or the other when the liability would be the same either way.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion December 4, 1888.