Alberto **CASTILLEJA**, Appellant,

v.

Severa **CAMERO**, Appellee.

No. 173.

Court of Civil Appeals of Texas.

Corpus Christi.

March 31, 1966.

W. G. Perkin, F. B. Godinez, Jr., Pharr, for appellant.

E. G. Henrichson, of Henrichson & Bates, Edinburg, for appellee.

GREEN, Chief Justice.

This' case involves a contest between the parties over the ownership and rights to proceeds of a winning ticket No. 33870 in the Mexican National Lottery of September 15, 1964. The suit was originally brought by appellee as plaintiff, against Famelisa Castilleja and her husband Jose Castilleja as defendants. By amended petition, appellant Alberto Castilleja was included as defendant. At the close of the evidence, plaintiff took a non-suit as to defendants Famelisa and Jose, leaving Alberto as the only defendant. All of the above named parties are residents of Edinburg, Hidalgo County, Texas.

On or about September 11, 1964, appellee gave to Famelisa $2.00 for the purpose of buying for appellee in Reynosa, Mexico, a one-half (½) interest in a $4.00 ticket in the Mexican National Lottery to be decided September 15, 1964, Famelisa to buy the other half for herself, with the agreement that the two of them were to "make a vaca," i. e., a partnership, in the ticket.[1] (Famelisa testified that appellee gave her only $1.00, but the testimony supported the jury's finding that appellee gave her $2.00.) Famelisa went to Reynosa that same day and purchased several tickets, including Nos. 33870 and 38512. On her return to Edinburg, she gave appellee a written memorandum with the number 33870 on it, stating that was the number of the ticket in which appellee owned a one-half interest.

Famelisa testified that on the following day, and before the drawing, she discovered that she was mistaken about the number of the ticket in which appellee owned a one-half interest, and that she went to appellee's house and told her of such mistake, stating to appellee that the number of the ticket in which the two of them had "made the vaca" was 38512 and not 33870. Famelisa further testified that appellee wrote such number on a piece of paper, and "said it was all right." According to Famelisa, ticket No. 33870 was purchased for her son, Alberto, defendant and appellant in this case. Ticket No. 38512, introduced in the evidence by defendant, had the word "Vaca" on the reverse side, written, according to Famelisa, by the man who sold her the tickets.

Appellee testified that she had given Famelisa $2.00 to buy for her a one-half interest in a $4.00 lottery ticket in the Mexican lottery, and that Famelisa was to buy and to own the other half. She further stated that after Famelisa had given her the written memorandum that the interest in the ticket purchased for appellee was in ticket No. 33870, she never thereafter stated anything to appellee about any other lottery ticket until several days after the drawing, and after all parties knew that ticket No. 33870 was the winner of the net sum after taxes due the Republic of Mexico of $34,000.00. According to appellee, on or about September 22nd she saw Famelisa, and demanded her half of the money and that then for the first time Famelisa denied that appellee owned any part of the winning ticket, and stated that such ticket was bought for her son Alberto, appellant herein, and was owned by him. Appellee has not received any part of the money won on the ticket.

Witness Nieto testified that on September 16th, he heard Famelisa say that she

[1.] The word "vaca" in Spanish means cow. However, as explained to us by counsel in oral argument, as applied to a Mexican lottery, it signifies a partnership in a lottery ticket, each person putting up a portion of the purchase price, with an agreement that the co-owners split the winnings, if any, in proportion to the amount contributed to the cost of the ticket.

owned the winning ticket in partnership with another lady.

Appellant Alberto Castilleja testified that he gave his mother money to buy him a ticket; that he considered the number 33870 his lucky number, and as proof of his favoritism for such number produced several tickets bearing the number 33870 which he said he had purchased at prior lotteries. He corroborated the testimony of his mother that such ticket was bought by her for him with his money and as his property. He said that on September 16th, the day after the drawing, his mother gave him ticket No. 33870, and he went to Banco Longoria in Reynosa, Mexico and cashed said ticket, receiving therefor the sum of $34,000.00, which he deposited to his own account in said bank.

Upon the trial, neither Jose nor Famelisa Castilleja claimed any part of this money. They testified that the winning ticket No. 33870 was purchased for appellant with his money. Appellee, on the other hand, contended that she had a one-half interest in the winning ticket, that appellant had no title or claim to the money and that he wrongfully held one half of the money as agent or bailee of appellee; that he had wrongfully converted appellee's money to his own use, and that appellee was entitled to recover the sum of $17,000.00 from appellant.

The jury, in answer to the two issues submitted, found that (1) Famelisa Castilleja purchased ticket No. 33870 for the benefit of the plaintiff Severa Camero, and the defendant Famelisa Castilleja, and (2) that the amount paid Famelisa by plaintiff was $2.00.

On the basis of the evidence and jury verdict, the court rendered judgment for plaintiff-appellee against defendant-appellant for $17,000.00. In the judgment, the court expressly found that appellee had a $17,000.00 interest in the sum on deposit in the Banco Longoria, and enjoined appellant from assigning, removing, dissipating, secreting or hiding said sum of money.

Appellant by a number of points of error raises the proposition that the entire alleged cause of action as shown by plaintiff's pleadings, the evidence, and the special issues submitted to the jury, was based on a transaction which was illegal, contrary to public policy, and unenforceable in Texas courts. The proposition of the illegality of the transaction and of the contract between appellee and Famelisa was raised in the trial court by appellant by special exceptions to the petition, by motion for summary judgment, by motion for instructed verdict dictated into the record after plaintiff had rested, by motion for judgment notwithstanding the verdict, and by motion for new trial. These same contentions are raised on appeal by appellant's points 1, 2, 3, 4, 5 and 9.

■ Appellant's first point, that the trial court erred in overruling his special exception to the Second Amended Original Petition, is overruled. The record does not show that such special exception was ever brought to the trial court's attention, or that he made any ruling thereon. Rule 90, T.R.C.P.; Marshall v. Huron, Tex.Civ. App., 274 S.W.2d 572; Tarkington v. Continental Casualty Company, Tex.Civ.App., 341 S.W.2d 490, writ ref., n. r. e.

■ Appellant's second point, that the trial court erred in overruling his motion for summary judgment, is overruled. This is not a point for consideration on appeal from a judgment rendered on a trial of the merits of the case. Stewart v. Lomax, Tex. Civ.App., 395 S.W.2d 82, writ ref., n. r. e.

Appellee's answer to the points of appellant raising the question of the illegality of the agreement between appellee and Famelisa is that appellant was not a party to such agreement; that he owned no interest in the money; that he received the money as either an agent, bailee, or third party stranger to the title thereof, and that as between appellee and appellant, it was not necessary for appellee to rely on an illegal or unenforceable contract or transaction to establish her cause of action.

According to the testimony of appellee, appellant owned no interest in the winning ticket, and no interest in the money here involved. This is the effect of the jury's answer to Special Issue No. 1. If, as contended by appellee and found by the jury, the winning ticket was the property of appellee and Famelisa, appellant when he was given the winning ticket by his mother to collect the proceeds was as a matter of law acting on behalf of the true owners in collecting and holding the proceeds. If such be the true facts, when, after depositing the money in the Mexican bank, he refused to recognize appellee's claim, and asserted ownership to the money, he converted same to his own use and benefit, and is in no position to raise the plea of illegality of the original contract between his mother and appellee.

"It is settled law that the courts will not enforce gambling contracts, but will leave the parties where they are found. But it has been determined with equal clearness that the fruit of a gambling venture is property about which the parties will be allowed to litigate. The courts will enforce no wagering contract, nor render any judgment based upon its terms. But when a wagering contract has been executed, and its fruits paid to the agent of the winner, the agent can not hold it against his principal. Floyd v. Patterson, 72 Tex. [202] 205, 10 S.W. 526, 13 Am. St.Rep. 787, and authorities cited." Russell v. Kidd, 37 Tex.Civ.App. 411, 84 S. W. 273.

From Hartford Fire Ins. Co. v. Galveston, H. & S. A. Ry. Co., Tex.Com.App., 239 S.W. 919, 923, opinion approved by Supreme Court, we copy as follows:

"It frequently happens as a result of the execution of an illegal contract that in consideration thereof some new title to property or some new property right vests in one of the parties to such contract. When such contract has been fully executed, and suit is brought, not for the enforcement thereof, but for a recovery upon or enforcement of the new title or right thus acquired relief will not be denied. Hall v. Edwards (Tex.Com.App.) [222] S.W. 167; Wegner v. Biering, 65 Tex. 506; Floyd v. Patterson, 72 Tex. 202, 10 S.W. 526, 13 Am.St.Rep. 787; De Leon v. Trevino, 49 Tex. 88, 30 Am.Rep. 101; Brooks v. Martin, 2 Wall. 70, 17 L.Ed. 732.

\*     \*     \*     \*     \*     \*

"The general rule is that the defense of illegality is confined to the parties to the contract and is not available to third parties to defeat a just claim against themselves. (citing authorities)."

See, also, City of Garland v. Texas Power & Light Co., Tex.Civ.App., 295 S.W.2d 925.

■ The contract between Famelisa and appellee to have a vaca, or partnership in the lottery ticket was contrary to law and public policy, and unenforceable between the parties thereto, even though the lottery was not unlawful in Mexico, where it was held and where the tickets were bought. Crutchfield v. Rambo, 38 Tex.Civ.App. 579, 86 S.W. 950, writ ref. Appellee is not attempting to enforce a partnership agreement, for she concedes that as between her and Famelisa she would have no legal rights in court to recover on such illegal contract. But the situation between appellee and appellant is quite different. There was no evidence that appellee and appellant were jointly interested in the winning ticket; appellant's claim of ownership was of the entire ticket, 100%, and permitted no partnership with anyone. Hence the jury's findings that ticket 33870 was purchased for the benefit of appellee and Famelisa excluded appellant from any legal claim whatever to the money.

■■ The wagering contract had been executed, and the fruits thereof had been paid to the one who, under the jury's findings, was not authorized to keep them

as against appellee. The illegality of the original transaction between the parties thereto does not taint or vitiate the rights of the principals to sue a third party recipient of the fruits of the illegal transaction. Hartford Fire Ins. Co. v. Galveston H. & S. A. Ry. Co., supra; Russell v. Kidd, supra. It was not necessary in order for appellee to establish her cause of action against appellant that appellee rely upon the illegal agreement with Famelisa that the proceeds of the ticket, if any, be split between them, even though such contract did appear incidentally in explanation of other facts in the case. Floyd v. Patterson, supra; Beer v. Landman, 88 Tex. 450, 31 S.W. 805; Norman v. B. V. Christie & Co., Tex.Civ.App., 363 S.W.2d 175, writ ref., n. r. e.; Annotation in 50 A.L.R., 293 et seq. Appellee's cause of action was based on her ownership of an interest in the ticket and consequently the money. In so far as rights between her and appellant are concerned, any agreement between Famelisa and appellee became incidental to her claim. Appellant was not a party to the original transaction between appellee and Famelisa and under the facts of this case cannot defend on the ground of illegality of the original transaction. Hartford Fire Ins. Co. v. Galveston H. & S. A. Ry. Co., supra; City of Garland v. Texas Power & Light Co., supra.

We hold that regardless of whether appellant received and holds the money as agent, trustee, bailee implied in law, or naked stranger to the title the defense that the original transaction between Famelisa and appellee was illegal and contrary to public policy is not available to him against the claims of appellee. His points 3, 4, 5, and 9 are overruled.

█ Appellant's points six and seven allege error as to the form and wording of Special Issue No. 1. The transcript does not show that any objections were made by appellant to the court's charge, or to the special issues, in the trial court. Hence, the asserted error was waived under Rule 274, T.R.C.P. Edwards v. Strong, 147 Tex. 155, 213 S.W.2d 979; Gale v. Spriggs, Tex.Civ.App., 346 S.W.2d 620, writ ref., n. r. e.; Grabes v. Reinhard Bohle Machine Tools, Inc., Tex.Civ.App., 381 S.W.2d 395, writ ref., n. r. e.

Point of Error No. Eight reads:

"The Honorable Trial Court erred in failing to submit a jury issue or issues requested by the Defendant, which were plead by the Defendant as a matter of an affirmative defense, and supported by the evidence."

Point Seven, which is duplicitous as to this, also raises this contention.

The point is too general and duplicitous to require consideration. Appellant requested four special issues, all of which were refused by the trial court, but the point does not specify to which requested issue it applies. However, we shall consider the matter of the alleged error in refusing such requests. They were as follows:

Requested Special Issue No. 1

"Do you find from a preponderance of the evidence that the Defendant Famelisa Castilleja did not purchase ticket No. 33870, for the joint benefit of the Plaintiff Severa Camero and the Defendants Famelisa Castilleja, Jose Castilleja and Alberto Castilleja.

"Answer 'Yes or No.'"

Requested Special Issue No. 2

"Do you find from a preponderance of the evidence that the Defendant Famelisa Castilleja did not purchase Ticket No. 38512 for the joint benefit of the Plaintiff Severa Camero and the Defendant Famelisa Castilleja on or about Sept. 11, 1964?

"Answer Yes or No"

Requested Special Issue No. 3

"Do you find from a preponderance of the evidence that the Defendant Alberto Castilleja did not own ticket No. 33870.

"Answer 'Yes' or 'No' "

Requested Special Issue No. 4

"Do you find from a preponderance of the evidence that the Defendant Alberto Castilleja did not own any interest in Ticket No. 33870 for the National Lottery of Mexico held on September 15, 1964—

"Answer 'Yes or No' "

■■ A defendant is entitled to an affirmative submission of his defensive issues made out by his pleadings and supported by the evidence when appropriate special issues are duly requested by him. Schuhmacher Co. v. Holcomb, 142 Tex. 332, 177 S.W.2d 951; Texas & Pacific Railway Company v. Van Zandt, 159 Tex. 178, 317 S.W.2d 528; Simpson v. Barham, Tex. Civ.App., 292 S.W.2d 874. But the failure to submit an issue is not reversible error unless its submission in substantially correct language has been requested in writing and tendered by the party complaining of the judgment. Rule 279, T.R. C.P.

■ Requested Issue No. 1 was merely the negative of the first issue as given, except that it added the names Jose and Alberto Castilleja. There is no evidence that the ticket was purchased for the joint benefit of Alberto and anyone else. In fact, he denied any such joint enterprise as to himself, relying on evidence that he owned 100% of ticket 33870. This issue was properly refused.

■ Appellant would have been entitled to a special issue inquiring as to his ownership of 33870, had he requested such issue in substantially correct language. This, as stated by appellant in his point of error, was an affirmative defense. The burden was on appellant to prove by a preponderance of the evidence that he was the owner of such ticket. The same is true as to the defense that the ticket in which appellee had an interest was No. 38512. Since appellee was not claiming an interest in that ticket, the burden was on appellant to show that she had such interest. The requested issues 2, 3, and 4, each misplaced the burden of proof on appellee, to show by a preponderance of the evidence the negative of appellant's defense.

■ The tender of an issue which misplaces the burden of proof is not tender of an issue in substantially correct language, and the refusal to give such issue is not reversible error. Rule 279, T.R.C.P., McDonald, Texas Civil Practice, Vol. 3, Sec. 12.33, p. 1152; Mitchell v. Mills, Tex.Civ. App., 264 S.W.2d 749, writ ref., n. r. e; Superior Insurance Company v. Burnes, Tex.Civ.App., 278 S.W.2d 934, writ ref., n. r. e.; Benefit Association of Railway Employees v. Hutson, Tex.Civ.App., 321 S.W.2d 607, writ ref., n. r. e.; Schad v. Williams, Tex.Civ.App., 398 S.W.2d 603.

Points 6, 7 and 8 are overruled.

■ Appellant's last three points, 10th, 11th and 12th, allege error of the trial court in entering the judgment for appellee because of the lack of evidence of any relationship, contractual or otherwise between appellant and appellee, and the absence of any jury finding of such a relationship between them. Such points do not reflect reversible error, and are overruled.

Appellant secured the money involved by reason of Famelisa delivering to him the winning ticket for collection after the drawing had been announced. Since the effect of the jury verdict was that appellee owned one half of the ticket, and that appellant owned no interest therein, there need be no contractual relationship between appellant, the possessor of the money, and appellee, except that which is implied in law from the fact of a third party re-

ceiving money which rightfully belongs to another. This has been discussed in this opinion under other points raised by appellant. The points of error are overruled.

Judgment affirmed.